**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **EDWARD B. WHITE**<br>      **LA. DOC. #130194** | **DOCKET NO. 08-CV-1321; SEC. P** |
| **VERSUS** | **JUDGE DEE D. DRELL** |
| **LYNN COOPER, ET AL.** | **MAGISTRATE JUDGE JAMES D. KIRK** |

## REPORT AND RECOMMENDATION

Pro se Plaintiff, Edward B. White filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on September 2, 2008. White's motion for leave to proceed in forma pauperis was granted on September 19, 2008. White is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC), and he is incarcerated at the Avoyelles Correctional Center (AVC) in Cottonport, Louisiana. White complains that his constitutional rights were violated by a delay in receiving medical care, and seeks compensatory damages of $350,000 from each defendant. White names as defendants Warden Lynn Cooper, Debra Ferguson, Nurse Bernice, Nurse Jimmy S., Nurse Jacob, Unknown Dentist, James Hines, Sergeant Knot, Sergeant Rhonda, Lieutenant Lockhart, Sergeant Washington, Lieutenant Tiser, Clyde Benson, and Richard Stalder, the Louisiana Secretary of Public Safety and Corrections.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## **Background**

White alleges that, on September 12, 2007, he was injured in a fist fight with another inmate, Will Pea. White suffered a broken jaw and broken left wisdom tooth. After the fight, White was removed from his cell in the administrative segregation tier A-1 and placed in the exercise room in administrative segregation tier B-1. At 5:27 p.m., White was examined by EMT Debra Ferguson, who told White that nothing was wrong with him. [Doc. #1, p. 7, 19] White told Ferguson that his jaw was broken, but she insisted that nothing was wrong other than scratches and a swollen jaw. [Doc. #1, p. 7, 19] White was charge a $3.00 medical co-payment and was not provided with pain medication. He was held in the exercise room until shift changed at 6:00 p.m.

At shift change, White told Sgt. Knots that he needed to make a medical emergency because his jaw was broken and hurting. Knots said that he would let Ms. Rhonda, the key sergeant, know of White's request. White was moved from the exercise room to a cell on the B-1 tier at around 2:30 a.m. [Doc. #1, p. 7, 19] He told Lt. Lockhart of his situation, and Sgt. Knots interjected that he had told Sgt. Rhonda to call for White. Lockhart then told White that he had called the infirmary and Nurse Bernice said that someone would see White during pill call.

At the 5:00 a.m. pill call that morning, White asked Nurse Jimmy S. to allow him to make a medical emergency for a broken jaw.

2

Jimmy said that he would pass on the request at 6:00 a.m. shift change. During shift change, White told Warden Clyde Benson that his jaw was broken, and he needed to see a doctor. Warden Benson told Lt. Tiser and Sgt. Washington to make sure the nurse saw White at 12:00 p.m. [Doc. #1, p.7, 20] At 12:00 p.m., Nurse Jacob showed up and White and Sgt. Washington informed her that White's jaw was broken and he needed to make a medical emergency. Nurse Jacob allowed the emergency call and placed White on the list to see the doctor the next day, September 14, 2007. White was charged the $3.00 co-pay for the medical emergency, but he received no pain pills from the nurse.

On September 14, 2007, White was examined by Dr. James Hines in the infirmary. Hines told White that his jaw appeared broken on the left side. Hines prescribed pain medication and ordered x-rays. Because the x-ray technician only works at Avoyelles once a week, White had to wait five days for his x-rays. The x-rays were taken on September 19, 2007, but Dr. Hines was not there to review the x-rays, so White asked if the dentist would review them. White's request was granted, and the x-rays were shown to the dentist. The dentist reviewed the x-rays with White, and informed White that his jaw was broken, as well as a wisdom tooth under the gums. The dentist ordered pain medication and scheduled an emergency trip for White to Huey P. Long medical center in Pineville the very next day. [Doc. #1, p.8, 21]

The next day, September 20, 2007, the doctor at Huey P. Long ordered additional x-rays and, after reviewing the films, referred White to an oral surgeon at LSU Medical Center. White wanted to go straight to LSU Medical, but he was taken back to AVC. On September 24, 2007, White was transported to LSU medical center to see a specialist. Additional x-rays were taken; then, the surgeon removed the wisdom tooth and set White's jaw in place. [Doc. #1, p.8-9, 22]

White complains that it took twelve days for him to get adequate medical treatment for a broken jaw, while another inmate, who had his jaw broken on October 2, 2007, received quicker treatment.

## **Law & Analysis**

To prevail under 42 U.S.C. § 1983, Plaintiff must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate ... medical care.'" Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious

4

medical needs, constituting an 'unnecessary and wanton infliction of pain.'" Easter, 467 F.3d at 463 (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle v. Gamble, 429 U.S. 97 (1976)). The deliberate indifference can be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 467 F.3d at 104-105 (footnotes omitted)); see also, Helling v. McKinney, 509 U.S. 25, 35-37 (1993).

Plaintiff's complaint is based solely on the alleged delay in medical treatment. Plaintiff concludes that twelve days between the date of his injury and the date of surgery was constitutionally prohibited. A delay in medical care can rise to the level of a constitutional violation if the delay is occasioned by deliberate indifference, which results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir.1990). To find that an official is deliberately indifferent, it must be proven that 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference'." Cantu v. Jones, 293 F.3d 839, 844 (5th Cir.2002), citing Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference encompasses only

5

unnecessary and wanton infliction of pain repugnant to the conscience of mankind." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir.1997) citing Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Broken bones and bleeding cuts are serious medical needs that require medical attention within hours. See Harris v. Coweta Cty., 21 F.3d 388, 393 n.6 (11th Cir. 1994). Ignoring an inmate's repeated requests for medical treatment and complaints of excruciating pain satisfies the deliberate indifference standard. Easter v. Powell, 467 F.3d 459 (5th Cir. 2006), quoting Harris v. Hegmann, 198 F.3d 153, 159-160 (5th Cir. 1999).

1.

White names Debra Ferguson, Nurse Bernice, Nurse Jimmy S., Nurse Jacob, Unknown Dentist, Sgt. Knot, Sgt. Rhonda, Lt. Lockhart, St. Washington, Lt. Tiser, and Warden Benson as defendants.

Debra Ferguson was the EMT who examined White at about 5:30 p.m., after his fistfight, and did not find anything wrong except a swollen jaw and scratches; Ferguson failed to diagnose White's broken jaw and tooth, and did not prescribe pain pills for White. At most, White has stated a claim of negligence against Ferguson which is not cognizable under Section 1983. Since White has not stated a Section 1983 claim, his action against Ferguson should be dismissed.

White has not stated Section 1983 claims against Nurse Bernice, Nurse Jimmy S., or Nurse Jacob. Nurse Bernice arranged to

a nurse to see White during pill call, Nurse Jimmy (who was on pill call) told the next shift (in an hour) to let White make a medical emergency, and Nurse Jacob put White on the doctor call-out list. It does not appear they were deliberately indifferent to White's serious medical needs, and White does not allege what he thinks they could have done differently. Therefore, White's action against Nurse Bernice, Nurse Jimmy S., and Nurse Jacob should be dismissed.

White's action against the "unknown dentist" should also be dismissed, since an unknown person cannot be served. Moreover, White has not stated a Section 1983 claim against the dentist, who did White a favor by reading the x-rays ordered by Dr. Hines and referring White to Huey P. Long Hospital.

White also names Sgt. Knot, Sgt. Rhonda, Lt. Lockhart, St. Washington, and Lt. Tiser as defendants, although White has not alleged facts to show they intentionally delayed his medical care and were deliberately indifferent to his serious medical needs. These prison officials attempted to arrange for White to be sent to the infirmary for medical care, although it ended up taking about a day to get him there. Therefore, White's action against Sgt. Knot, Sgt. Rhonda, Lt. Lockhart, St. Washington, and Lt. Tiser should be dismissed.

White names Warden Benson as a defendant, despite the fact that, when White told him he believed his jaw was broken, Benson

immediately ordered that White be taken to the infirmary for an emergency call. White has not alleged any facts to support a claim that Warden Benson was deliberately indifferent to his serious medical needs, and his action against Warden Benson should be dismissed.

2.

White names Richard Stalder, the Secretary of the Department of Public Safety and Corrections, as a defendant because he is "ultimately responsible for the training and supervision" of everyone employed at AVC. The Eleventh Amendment bars suit against a state official when the state is the real substantial party in interest. An official capacity suit against a state officer is not a suit against the official but rather against the official's office. As such it is no different from a suit against the state itself. Neither a state nor its officers acting in their official capacities are "persons" under §1983. Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 258, 362, 116 L.Ed.2d 301 (1991). Also, Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Voisin's Oyster House v. Guidry, 799 F.2d 783, 788 (5th Cir. 1986). Stalder is entitled to absolute immunity from this suit in his official capacity.

Moreover, White has not alleged any facts to show that Stalder was actually aware of or personally involved in White's predicament. In order to establish the personal liability of a

certain defendant to a plaintiff who is claiming damages for deprivation of his civil rights, that plaintiff must show that particular defendant's action or inaction was a violation of the plaintiff's civil rights. Reimer v. Smith, 663 F.2d 1316, 1322 n. 4 (5th Cir. 1981). Also, Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 1098 n. 7, 89 L.Ed.2d 271 (1986). Therefore, White's action against Stalder in his individual capacity should be dismissed, also.

3.

White named Warden Lynn Cooper as a defendant because, on September 21, 2007, he told Warden Cooper that his jaw was broken and he needed medical treatment. Apparently, White was unhappy that he was not taken to the oral surgeon immediately after seeing the doctor at Huey P. Long on September 20, 2007. However, although White had a referral to the oral surgeon from the doctor at Huey P. Long, White needed to make an appointment to schedule his surgery, so White underwent surgery four days later. White has not alleged any facts to show Warden Cooper violated White's right to medical care because he was not immediately taken to the oral surgeon for surgery.

White also alleges that Warden Cooper is responsible for the operation of AVC, and that the AVC medical department is understaffed. White contends Dr. Hines is the only doctor employed by AVC, although there are 1400 inmates, and that Dr. Hines is only

9

employed part time.[1]

To prevail on a claim of understaffing, a plaintiff must plead and prove there was a policy at the prison, promulgated or implemented by the policy-making official, of deliberate indifference to the risk of understaffing and that this policy caused his injury. Greason v. Kemp, 891 F.2d 829, 838 (11th Cir. 1990); Westmoreland v. Brown, 883 F.Supp. 67, 76 (W.D.Va. 1995). Evidence of understaffing, without more, is not proof of official policy. Hood v. Itawamba, 819 F.Supp. 556, 566 (N.D. Miss. 1993); Gagne v. City of Galveston, 671 F.Supp. 1130, 1135 (S.D.Tex. 1987), aff'd, 851 F.2d 359 (5th Cir. 1988). Evidence of understaffing would become proof of an official policy only if more complete funding and staffing were possible and it was the deliberate intent of the policy-making official not to adequately fund and staff the jail. Gagne, 671 F.Supp. at 1135. When understaffing appears to have contributed to a violation of an inmate's Eighth Amendment rights, a causal link exists between that violation and the city's policy if officials are aware of the staffing problem but fail to take corrective action. Greason, 891 F.2d at 837 n.18, and cases cited therein.

White contends that understaffing the medical department at

---

[1] In West v. Atkins, 487 U.S. 42, 47, 108 S.Ct. 2250, 2254 (1988), the Supreme Court held that a private doctor under contract with the state to supply medical services to prisoners is a state actor.

AVC contributed to the denial of timely medical care for him. White contends that AVC does not comply with the American Correctional Association standards for staffing the prison's medical infirmary, and that the lack of sufficient medical personnel causes unconstitutional delays in providing medical care and unnecessary pain and suffering for inmates with serious medical problems. White further contends that Dr. Hines has since quit working at AVC because of this incident.

Reading White's pro se complaint liberally, in accordance with Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596 (1972),[2] White has stated a claim against Warden Cooper for understaffing the medical infirmary at AVC, which resulted in the delay in providing him medical care for his broken jaw.[3]

4.

White also names Dr. Hines as a defendant. A prison doctor acts with deliberate indifference only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Ledesma v. Swartz, 134 F.3d 369 (5th Cir. 1997). Dr. Hines told White his jaw was broken, he prescribed pain medication, and he ordered x-rays to confirm his diagnosis. It is noted that White has not alleged that

---

[2] Pro se claims for relief are held to less stringent standards than formal pleadings drafted by lawyers.

[3] A separate order for service of process on Warden Cooper will be issued.

Dr. Hines was aware the x-ray technician would not be there for 5 days. In any event, Dr. Hines prescribed pain medication for White to take while he waited. Moreover, White states in his complaint that it was impossible for Dr. Hines, alone and employed part time, to provide proper and timely medical care for 1400 inmates. Since White has not alleged facts to show that Dr. Hines was deliberately indifferent to White's serious medical needs, White's action against Dr. Hines should also be dismissed for failure to state a claim cognizable under Section 1983.

## Conclusion

Based on the foregoing discussion, **IT IS RECOMMENDED** that White's action against Debra Ferguson, Nurse Bernice, Nurse Jimmy S., Nurse Jacob, Unknown Dentist, Sgt. Knot, Sgt. Rhonda, Lt. Lockhart, St. Washington, Lt. Tiser, Warden Benson, Richard Stalder, and Dr. Hines be **DISMISSED WITH PREJUDICE** in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

**Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.**

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this**

**Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** See <u>Douglass v. United Services Automobile Association</u>, **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 7th day of April, 2009.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE